**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MAURICE WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | No. 21-cv-04413-RAL |
| Commissioner of Social Security | : | |
| | : | |
| Defendant | : | |

**RICHARD A. LLORET**                                       **January 8, 2024**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM OPINION

An Administrative Law Judge ("ALJ") denied Plaintiff Maurice Williams'

("Plaintiff's") application for Supplemental Social Security Income after the Appeals

Council remanded the ALJ's earlier decision because of errors.  Mr. Williams contends

that the latest unfavorable decision was also reached in error. *See* Doc. No. 11 ("Pl. Br.").

He argues that the ALJ made numerous errors in his analysis, including: (1) crafting a

residual functional capacity determination that is not supported by substantial evidence

and created in a manner inconsistent with several Social Security Administration

policies; (2) failing to consider Mr. Williams' impairment of chronic pain; and

(3) adopting testimony from a vocational expert premised on a flawed residual

functional capacity. Pl. Br. at 2. The Acting Commissioner of Social Security (the

"Commissioner") responds that the ALJ reasonably determined that Mr. Williams failed

to sustain his burden of proof and urges that "[g]iven the highly deferential substantial

evidence standard of review that applies to the ALJ's fact-finding, this Court should

reject Plaintiff's arguments and affim the ALJ's decision." Doc. No. 12 at 1–2 ("Comm. Br.").

After careful review, I find that the ALJ's decision was not supported by substantial evidence. The ALJ improperly ignored a medical opinion of Mr. Williams' treating physician without explanation, failed to explain his conclusions regarding the amount of off-task time required to accommodate Mr. Williams' residual functional capacity, and failed properly address a conflict in the record regarding Mr. Williams' need to use a wheelchair. In light of these errors, I will remand.

## PROCEDURAL HISTORY

On December 12, 2018, Mr. Williams filed a claim for supplemental security income. R. 81, 409.[1] Mr. Williams alleges that he is disabled due to several severe impairments including, Crohn's disease, degenerative disc disease, obesity, post-traumatic stress disorder, major depressive disorder, chronic pain disorder, piriformis syndrome of both sides, and anxiety. Pl. Br. at 3. Mr. Williams' application was denied initially on May 15, 2019. R. 242. On, December 27, 2019, Mr. Williams requested a hearing before an ALJ. R. 259. The request was granted and a telephonic hearing was held before ALJ Robert Ryan on August 4, 2020 at which Mr. Williams and a vocational expert testified. *See* R. 43–76. On August 14, 2020, following the hearing, ALJ Ryan issued an unfavorable decision. R. 206–232. Mr. Williams appealed, through counsel and, on October 27, 2020, the Appeals Council vacated ALJ Ryan's decision and remanded for a new hearing. R. 233–238. A second hearing was held on March 5, 2021, at which Mr. Williams and a vocational expert again testified. R. 112–150. On May 17,

---

[1] All references to the administrative record will be listed as "R. ____". The administrative record is document number eight on ECF.

2021, following the hearing, ALJ Ryan issued a second unfavorable decision. R. 29. On August 19, 2021, the Appeals Council denied Mr. Williams' second request for review, making the ALJ's determination a final determination. R. 1–6. Mr. Williams then filed an appeal in this Court. Doc. No. 1.

## FACTUAL BACKGROUND

### A.    The Claimant's Background

Mr. Williams was thirty-six years old on the date of his application, making him a "younger person" under the regulations. R. 27; 20 C.F.R. §§ 404.1563. Mr. Williams has completed a high school level of education, but, due to a significant period of incarceration beginning in 1995, he has no past relevant work history. *Id.* Mr. Williams cannot complete his activities of daily living on his own and relies on the assistance of a home health aide for fifty-six hours per week. R. 5666. Mr. Williams is dependent on his aide to assist with food preparation, housework, and shopping and he requires significant assistance with bathing, dressing, and using the bathroom. R. 5672, 5681–82. In January 2021, subsequent to the Appeal's Council's remand, but before the second hearing, Mr. Williams was prescribed a wheelchair for use within his home. R. 6049. Mr. Williams also suffers from severe psychological symptoms including depression, anxiety, and PTSD, the symptoms of which cause him to socially isolate. *See* R. 25–26.

### B.    The ALJ's Decision

The ALJ found that Mr. Williams was not disabled under the Social Security Act during the relevant period. R. 29. In reaching this decision, the ALJ made the following

findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[2]

At step one, the ALJ concluded that Mr. Williams has not engaged in substantial gainful activity since the application date of December 12, 2018. R. 18. At step two, the ALJ determined that Mr. Williams has nine severe impairments: degenerative disc disease, lumbar radiculopathy, Crohn's disease, obesity, piriformis syndrome of both sides, major depressive disorder, PTSD, borderline personality disorder, and anxiety disorder with panic attacks. R. 18. The ALJ determined that the following impairments were non-severe: GERD, eczema, vitiligo, anemoa, and headaches. R. 18. At step three, the ALJ compared Mr. Williams' impairments to those constained in the Social Security Listing of Impairments[3] and found that Mr. Williams' impairments, alone or in combination, did not meet or medically equate to the severity of one of the listed imparments. R. 18.

Prior to reviewing step four, the ALJ determined that Mr. Williams had the residual functional capacity ("RFC") to perform sedentary work, with some exceptions. [4]

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[3] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

R. 20 (citing 20 C.F.R. § 416.967(a)). The ALJ determined that Mr. Williams can

perform work "limited to simple, routine tasks with few work place changes" but that he

"shall have no interaction with the public and no more than occasional interaction with

supervisors." R. 20–21. In addition, the ALJ determined that Mr. Williams "would be off

task up to but not in excess of ten percent of the workday and would be absent an

average of one day a month." R. 21. The ALJ also acknowledged that Mr. Williams

"requires a cane for ambulation but can carry small objects in his free hand." R. 20.

      The ALJ acknowledged that Mr. Williams was a "younger individual," per

20 C.F.R. § 416.963, on the date of his application. R. 27. The ALJ determined that

Mr. Williams had at least a high school education and that transferability of job skills

was not material to the determination of disability because "the claimant does not have

past relevant work." R. 27 (citing 20 C.F.R. § 416.968). Having found that Mr. Williams

had no past relevant work, the ALJ proceeded to step five. *See* R. 27

      At step five, the ALJ determined that "there are jobs that exist in significant

numbers in the national economy" that Mr. Williams can perform, including the job of a

weight tester, a fishing reel assembler, or a dowel inspector. R. 28. The ALJ ultimately

concluded that Mr. Williams was not disabled during the relevant period. R. 29.

## STANDARD OF REVIEW

      My review of the ALJ's decision is deferential. I am bound by his findings of fact

to the extent those findings are supported by substantial evidence in the record.

*Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422,

427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to

---

Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are
met." 20 C.F.R. § 404.1567.

determining if substantial evidence supports the decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's factual conclusion is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g); *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, J.) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in his opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). An ALJ must also address all pertinent evidence in the record. *See id.* at 121–22. When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

An ALJ's decision is to be "read as a whole." *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The question on review is whether, reading the ALJ's opinion as a whole against the record, the reviewing court can understand why the ALJ reached his decision and can identify substantial evidence in the record supporting that decision. *Caruso v. Commr. of Soc. Sec.*, 99 Fed. Appx. 376, 379 (3d Cir. 2004)).

## DISCUSSION

Mr. Williams, through counsel, presents five issues for my review. First, he argues that the ALJ's RFC determination is inconsistent with Social Security Administration policy because the ALJ failed to consider a medical opinion provided by Mr. Williams' primary care physician Dr. Lee.  Pl Br. at 8–10. Next, he argues that the ALJ's finding that Mr. Williams would only be off task 10% of the time is not supported by substantial evidence. Pl. Br. at 10–13. Mr. Williams goes on to argue that the RFC is under inclusive because it fails to account for limitations related to Mr. Williams' chronic pain and his medically documented need to use a wheelchair. Pl. Br. 14–18.

Mr. Williams likewise argues that the ALJ's step five finding is flawed because it relies on hypothetical testimony from the vocational expert which excludes Mr. Williams' reliance on a wheelchair. R. 19–21. Finally, Mr. Williams asserts that the ALJ failed to analyze his diagnosed chronic pain syndrome as a severe impairment at step two. R. 21–24. The Commissioner responds that "[g]iven the highly deferential substantial evidence standard of review that applies to the ALJ's fact-finding, this Court should reject Plaintiff's arguments and affirm the ALJ's decision." Comm. Br. at 2. Based upon the discussion below, I find that this matter warrants remand.

## A.     The ALJ's RFC determination was not based on substantial evidence.

Prior to step four, the ALJ determined Mr. Williams' residual functional capacity and found that Mr. Williams could perform sedentary work that is "limited to simple, routine tasks with few work place changes," with "no interaction with the public and no more than occasional interaction with supervisors," and where Mr. Williams "would be off task up to but not in excess of ten percent of the workday and would be absent an average of one day a month." R. 20–21. The ALJ further determined that Mr. Willliams was able to use a cane for ambulation. R. 20. Mr. Williams asserts that "the ALJ made several errors when crafting the RFC, and as a result, [] the hypotheticals propounded to the [vocational expert] based on the RFC were flawed." Pl. Br. at 7–8. In response, the Commissioner asserts that "[s]ubstantial evidence supports the ALJ's finding that Plaintiff retained the RFC to perform a narrow range of sedentary work that allowed for cane use, off task, and mental limitations." Comm. Br. at 7.

1.  *The ALJ erred by failing to consider a medical opinion letter by
    Mr. Williams' primary care physician in making his RFC
    determination.*

Mr. Williams first alleges that the ALJ erred by failing to evaluate a medical

source opinion from his primary care physician, Dr. Lee. Pl Br. at 8–10. The opinion in

question is an April 10, 2020 letter from Dr. Lee (the "April 10 Letter") which indicates

that Mr. Williams "has been unable to work for the entire time [Dr. Lee] [has] known

him as a patient." R. 5821. In response, the Commissioner asserts that the April 10

Letter was not a "medical opinion" and, therefore, the ALJ was not required to analyze

the statement under the revised regulations. Comm. Br. at 4–7. In doing so, the

Commissioner concedes that the ALJ did not address Dr. Lee's April 10 Letter in his

opinion.

Mr. Williams applied for benefits after March 17, 2017, thus the relevant

regulations provide that:

> A medical opinion is a statement from a medical source about what [the
> claimant] can still do despite [his] impairment(s) and whether [he] [has]
> one or more impairment-related limitations or restrictions in the following
> abilities:
>
> > (i) [the claimant's] ability to perform physical demands of work
> > activities, such as sitting, standing, walking, lifting, carrying,
> > pushing, pulling, or other physical functions (including
> > manipulative or postural functions, such as reaching, handling,
> > stooping, or crouching);
> >
> > (ii) [the claimant's] ability to perform mental demands of work
> > activities, such as understanding; remembering; maintaining
> > concentration, persistence, or pace; carrying out instructions; or
> > responding appropriately to supervision, co-workers, or work
> > pressures in a work setting;
> >
> > (iii) [the claimant's] ability to perform other demands of work, such
> > as seeing, hearing, or using other senses; and

(iv) [the claimant's] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). When evaluating medical source opinions, the ALJ must articulate how he considered the medical opinion including "how persuasive [he] find[s] a medical source's medical opinions" to be. 20 C.F.R. § 416.920c(b).

The April 10 Letter establishes that Mr. Williams had been receiving treatment from Dr. Lee for about a year-and-a-half for his Crohn's disease, PTSD, depression, anemia, and chronic back pain. R. 5821. In the letter, Dr. Lee notes that Mr. Williams "is functionally limited by his depression and chronic PTSD" which prevents him from having "substantial interpersonal engagement." R. 5821. Dr. Lee ends the letter with her conclusion that Mr. Williams "has been unable to work for the entire time [she] [has] known him as a patient." R. 5821. Read as a whole, the April 10 Letter contains a statement from Dr. Lee indicating that Mr. Williams has functional limitations related to his "ability to perform mental demands of work activities," specifically his ability to interact with others. *See* 20 C.F.R. § 404.1513(a)(2). This is sufficient for me to find that the April 10 Letter is a "medical opinion" as defined in the regulations.

It is well settled that an ALJ must consider all relevant evidence when determining a claimant's RFC, including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); *see also Plummer*, 186 F.3d at 433. The resulting decision must include a "clear and satisfactory explication of the basis on which it rests," which is sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981). Although the

ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. *See Plummer*, 186 F.3d at 429. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705.

Dr. Lee' April 10 Letter is a medical opinion from Mr. Williams' treating physician and, therefore, under the relevant standards, it should have been considered by the ALJ in reaching his RFC determination. Its omission is not harmless. Dr. Lee's medical opinion described functional limitations regarding Mr. Williams' ability to interact with others that were more stringent than those provided in the RFC. Specifically, where Dr. Lee noted that Mr. Williams cannot have any "substantial personal engagement" with others, the RFC provides that Mr. Williams is able to talk to supervisors for up to one third of each workday. R. 20; *see Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (S.S.A. 1983) (defining "occasionally" as one-third of a work-day). Had the ALJ considered Dr. Lee's opinion, he may have adoped a RFC that reflected even more restricted social interactions, further eroding the occupational base available to Mr. Williams.

While the ALJ is not required to accept Dr. Lee's conclusions regarding the level of interpersonal engagement that Mr. Williams can tolerate, he should have at least discussed the opinion and explained whether he found it persuasive. Without such an explanation, I cannot make a proper determination on review. Therefore, I find that the ALJ erred and remand is warranted.

2.   *The ALJ's conclusion that Mr. Williams would only be off task 10%*
     *of the time is not adequately explained.*

Mr. Williams alleges that the ALJ erred by failing to explain his reasons for

including a limitation that he would only be off task 10% of the day in his RFC. Pl. Br.

at 10–13. He specifically alleges that "although the ALJ found that Mr. Williams had

impairments that would cause him to be off-task, the ALJ did not discuss or explain how

those findings supports his conclusion that Mr. Williams would be off-task only ten or

less percent of the workday." Pl. Br. at 12. In response, the Commissioner asserts "the

ALJ's decision permits meaningful judicial review, and Plaintiff has failed to

demonstrate that the evidence credibly supported greater off-task time." Comm. Br. at

10–13. For the reasons discussed below, I find that the ALJ's off-task limitation is not

supported by substantial evidence and warrants remand.

The Commissioner suggests that "[t]here was no reversible legal error because

the ALJ's finding that Plaintiff's impairments would cause him to be off-task for up to

but not in excess of ten percent of the workday was supported by the ALJ's thorough

review and discussion of the relevant evidence supporting the RFC finding." Comm. Br.

at 11. I do not read the ALJ's opinion as providing any explanation of the evidence that

supported this determination, let alone a "thorough" explanation.

During a typical eight-hour work day, an employee is off-task for 10% of the time

if he is engaged in non-work-related tasks for more than 48 minutes a day or four hours

a week. Mr. Williams was diagnosed with Crohn's disease in 2006. R. 460. He has

described his symptoms as causing "severe abdominal pain" in his "entire stomach

area." R. 460. Mr. Williams relies on a home health aide to help with his personal needs

and grooming, and to assist him with his medications. *See* R. 22, 454.  Mr. Williams

testified that, as a result of his Crohn's symptoms, he uses the bathroom at least eight times a day and that he has little notice of having to do so. R. 22. At his initial hearing, Mr. Williams testified "I don't think even if I had . . . multiple people assisting me, I could get to the bathroom on time. So I think unless I can get that under control, [] I don't feel comfortable being outside the house." R. 93. As Mr. Williams explained at his second hearing, on an average day he goes to the bathroom "at a minimum [] eight times a day" and, if he makes it to the bathroom, he is "going to be in the bathroom for a half hour" at a minimum. R. 139–140. The ALJ failed to explain how the above factors— particularly Mr. Williams' testimony regarding the severity and frequency of his Crohn's symptoms—support a conclusion that Mr. Williams would be off task for less than 48 minutes each work day.

While the ALJ included off-task time in the RFC determination, he did not provide his reasoning for determining that 10% would be an appropriate amount of off-task time or explain how he determined that the off-task time included in the RFC was appropriately tailored to Mr. Williams' needs. As a result, it is unclear whether the off-task determination is based on substantial evidence and whether such breaks do adequately accommodate Mr. Williams' Crohn's symptoms. In her Response, the Commissioner suggests that the 10% limitation is "particularly generous" in light of the fact that none of the medical consultants suggested that an off-task limitation was warranted. Comm. Br. at 12. Yet, because the ALJ did not sufficiently explain how he got from the evidence to his conclusions, I cannot evaluate whether his chosen limitation is reasonable, insufficient, or even particularly generous.

It is possible that the ALJ arrived at his RFC determination for the reasons described in the Commissioner's Response. However, I cannot affirm on this basis. As

written, the ALJ's decision does not allow me to discern whether the ALJ took into consideration Mr. Williams' Crohn's disease symptoms in formulating the off-task element of the RFC. *See Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp. 3d 440, 456 (D.N.J. 2016) ("The Third Circuit 'requires the ALJ to set forth the reasons for his decision.'") (quoting *Burnett*, 220 F.3d at 123). This is not merely harmless error. At Mr. Williams' first hearing, the Vocational Expert noted that an employee "would not be able to keep up with the activity expectations" of the hypothetical work if the employee needed to be off task more than 10% of the time because he had to go to the bathroom due to Crohn's disease. R. 74. Whether the ALJ properly took into account Mr. Williams' Crohn's-related symptoms in formulating the RFC thus may affect the ultimate finding of disability.

3. *The ALJ erred by failing to consider Mr. Williams' medically documented need to use a wheelchair when evaluating his RFC.*

Mr. Williams alleges that the ALJ erred by failing to consider the limitations associated with his medically documented need to use a wheelchair in making his residucal functional capacity determination. Pl. Br. 14–18. In response, the Commissioner argues that "the ALJ considered and discussed the evidence related to Plaintiff's alleged wheelchair use, but reasonably found that an RFC limitation for the same was unwarranted." Comm. Br. at 13. As discussed below, I find that the ALJ erred by relying on medical opinions dated prior to Mr. Williams' wheelchair prescription to support his RFC determination.

When record evidence conflicts, an ALJ must weigh the evidence but "cannot reject evidence for no reason or the wrong reason." *Plummer*, 186 F.3d at 429. An ALJ may not "supplant [] the opinions of [the claimant's] treating and examining physicians

with his personal observation and speculation." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ "need not undertake an exhaustive discussion of all the evidence." *Hernandez v. Comm'r of Soc. Sec.*, 89 F. App'x 771, 773–74 (3d Cir. 2004). However, an "ALJ's failure to address evidence in direct conflict with his/her findings or to reject uncontradicted evidence without a clear statement of the reasoning is erroneous." *Landeta v. Comm'r of Soc. Sec.*, 191 F. App'x 105, 110 (3d Cir. 2006) (citing *Cotter*, 642 F. F2d at 705).

     In his opinion, the ALJ acknowledged that Mr. Williams reported that "he cannot stand for more than twenty minutes due to spinal nerve damage" (R. 21) and that he can only walk "about twenty-five feet" by himself. R. 22. When he does walk, Mr. Williams uses a brace and a cane. R. 21. Between Mr. Williams' initial hearing and the second hearing on remand, he was prescribed a wheelchair. R. 21. Mr. Williams reported "us[ing] a cane to help him stand, and then the wheelchair to help him get around." R. 21. In her notes following Mr. Williams' January 13, 2021 appointment, Dr. Lee indicated that Mr. Williams "cannot safely ambulate one hundred feet with a rolling walker, cane or crutch" but that he "can safely self-propel a wheelchair [as] it is needed to complete his activities of daily living in the home." R. 25. The ALJ discounted Dr. Lee's assessment, noting that he was not sure whether the records reflected Dr. Lee's opinion or a report by Mr. Williams. R. 25. At the second hearing, the ALJ acknowledged that Mr. Williams requires "help with virtually every aspect of [his activities of daily living] and is now being given a wheelchair." R. 132–133. Yet, the ALJ discounted Mr. Williams' statements regarding the intensity, persistence, and limiting effects of his symptoms, finding that "during examinations and evaluations, the claimant was able to ambulate and stand more effectively than he testified." R. 25.

The ALJ suggests that Mr. Williams is able to walk and stand more effectively than he testified because he has "indicated he was able to perform activities of daily living" in certain medical records. R. 25. To support that assertion, the ALJ cites to Mr. Williams' psychology records (R. 4453–4462) in which psychologist Dr. Christopher Patrone noted that Mr. Williams "can dress, bathe, and groom himself. He can cook and prepare simple food. . . . He does not shop. . . . He does not drive. . . . [H]e does not take public transportation because he is incontinent, so he usually doe not travel far from home. . . . He spends his days mostly in the house." R. 4458. I do not read these records to support a conclusion that Mr. Williams is "able to abulate and stand more effectively than he testified," as the ALJ suggests. R. 25. Regardless, the cited psychological records relate to an appointment in April 2019, almost two years before Mr. Williams was prescribed a wheelchair in January 2021.

The ALJ also relied on conclusions reached in the initial disability determination by Dr. Candelaria Legaspi and on reconsideration by Dr. Josie Henderson. R. 26. Based on their review of Mr. Williams' medical records and functional report, Dr. Legaspi and Dr. Henderson each determined that Mr. Williams was capable of standing or walking for a total of two hours a day (R. 164, 197) with the assistance of a cane (R. 163, 198). The ALJ determined that both of these opinions "seem persuasive" because they are "generally consistent with the evidence of record." R. 27. Again, the ALJ's treatment of these opinions overlooks the fact that Dr. Candelaria and Dr. Henderson based their opinions on their review of Mr. Williams' medical records as of April 2019 and December 2019, respectively (R. 26) but Mr. Williams was not prescribed his wheelchair until January 2021. R. 6049. The ALJ does not explain why he nevertheless found

Dr. Calendaria and Dr. Henderson's conclusions to be persuasive, and that reasoning is not obvious to me in reviewing the record.

The ALJ's determination that Mr. Willliams is able to use a cane for ambulation directly contradicts his acknowledgment that Mr. Williams "cannot safely ambulate one hundred feet with a rolling walker, cane or crutch" and requires a wheelchair to complete his activities of daily living in a timely manner. *See* R. 25. Given the developments between Mr. Williams application date and the second hearing, the earlier records that the ALJ relies on to support his contrary RFC determination would not have actually considered whether Mr. Williams could walk with a cane or whether he required a wheelchair to get around. The ALJ has not explained whether or why he decided to discount the more recent records, and so has not provided a sufficient analysis for me to make a proper determination on review. Therefore, I find that the ALJ erred, and remand is warranted.

**B.     The ALJ's step five analysis is flawed because the ALJ relied on a vocational expert hypothetical that did not consider Mr. Williams' medically documented need to use a wheelchair.**

Mr. Williams also alleges that the ALJ erred at step five by basing his conclusions on the Vocational Expert's response "to a flawed hypothetical, where the ALJ did not account for Mr. Williams' medically necessary wheelchair." Pl. Br. at 19. In response, the Commissioner notes that the ALJ's conclusion "was accurate and consistent with the vocational expert's testimony" and that the ALJ rightly did not rely on the Vocational Expert's testimony regarding Mr. Williams' wheelchair limitation "because such a limitation was neither consistent with nor supported by the record." Comm. Br. at 15–16.

As discussed above, I disagree with the Commissioner's suggestion that the ALJ's treatment of Mr. Williams' wheelchair limitation was based on sufficient evidence. Because I am remanding due to other errors, I will not address Mr. Williams' challenges related to the hypotheticals presented to the vocational expert, as Mr. Williams' RFC may change on remand. On remand, the ALJ should ensure that each of his conclusions is rooted in substantial evidence based on the record and that all plausible limitations in his RFC are properly presented to the vocational expert.

**C.    The ALJ erred by failing to evaluate Mr. William's chronic pain syndrome at step two.**

Mr. Williams alleges that the ALJ erred by failing to consider the severity of his chronic pain syndrome at step two, three, or four of the analysis. Pl. Br. at 21–24. In response, the Commissioner contends that "Plaintiff cannot establish harmful legal error in the ALJ's analysis because (1) the ALJ did not end the disability inquiry at step two; and (2) he accounted for Plaintiff's chronic pain-related limitations in the RFC finding." Comm. Br. at 16. The Commissioner does not deny that the ALJ failed to specifically consider Mr. Williams' chronic pain syndrome. *See id.* at 16–19. This was an error and resulted in the ALJ improperly evaluating Mr. Williams' medically determinable impairments at step two.

At step two, the ALJ is required to consider the medical severity of any medically determinable impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii). To be medically determinable, an "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can he shown by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 404.1521. "The burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360

(3d Cir. 2004). A plaintiff merely must pass a *de minimis* screening test. *Id.* "[E]ven if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration." *McClease v. Comm'r of Soc. Sec.*, No. 08-1673, 2009 WL 3497775, at *10 (E.D. Pa. Oct. 28, 2009) (Yohn, J.); *see also Jones v. Astrue*, No. 10-3226, 2011 WL 4478489, at *9 (D.N.J. Sept. 26, 2011) (collecting cases) ("Even if an ALJ erroneously decides at step two that a certain impairment was not severe, but finds another is, such error may be harmless.").

Mr. Williams specifically alleged that he suffers from "spine issues that cause[] pain" and "excruciating pain" in the function report he submitted as part of his application. R. 452. Mr. Williams describes his pain as "severe abdominal pain and severe joint pain" caused by "bending, standing, walking, sitting." R. 460. As reflected in his medical records, Mr. Williams was diagnosed with chronic pain as early as September 18, 2015. *See* R. 3681. This diagnosis is reflected in both his prison medical records (*see e.g.* R. 3731, 3896, 5627) and in his pain management records (*see e.g.* R. 4035, 5250). In her April 10 Letter, Dr. Lee clearly notes that Mr. Williams suffers from "Acute on Chronic right-sided low back pain." R. 5821. At both the initial hearing and the reconsideration hearing, Mr. Williams' attorney explained that Mr. Williams suffers from "acute chronic right-sided low back pain" (R. 50, 82) and that Mr. Williams has "a long history of chronic back pain" which "is getting worse and worse" R. 119.

Despite the *de minimis* screening standard applicable at step two, the ALJ failed to mention Mr. Williams' chronic pain syndrome in his step two analysis and did not

explain whether or why he determined that Mr. Williams' chronic pain was not a medically determinable impairment. R. 18. Nor did the ALJ consider the effects of Mr. William's chronic pain at steps three through five.

It is possible that the record contains substantial evidence to support a finding that Mr. Williams' chronic pain syndrome is not a medically determinable impairment. However, because the ALJ did not explain his reasoning for ignoring this alleged impairment at step two, I cannot conduct a meaningful review of his determination. *See James M. v. Comm'r of Soc. Sec.*, No. 20-8745, 2022 WL 3152638, at *4 (D.N.J. Aug. 8, 2022) (remanding decision where ALJ failed to explain why the claimant's headaches were not medically determinable impairments despite "multiple instances in the record where a medical doctor has noted a diagnosis of headaches") (citing *Burnett*, 220 F.3d at 122; *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). The ALJ's failure to discuss Mr. Williams' chronic pain syndrome at step two is presumptively prejudicial because an ALJ is only required to consider limitations imposed by medically determinable impairments at the later stages of the sequential evaluation. *See* 20 C.F.R. § 404.1545(a)(2) (noting RFC is based on consideration of all medically determinable impairments, including those that are not severe).

I disagree with the Commissioner's contention that "the ALJ carefully considered the evidence related to Plaintiff's chronic pain and fully accounted for his pain-related limitations in the RFC finding." Comm. Br. at 17. While the ALJ mentions that Mr. Williams "reported having chronic pain, major depressive disorder, PTSD and anxiety" in his RFC determination (R. 21), he does not appear to have considered Mr. Williams' chronic pain when reaching his conclusion regarding Mr. Williams ultimate RFC.

Thus, I find that the ALJ erred and that remand is warranted. On remand, the ALJ should evaluate whether Mr. Williams' chronic pain syndrome is a medically determinable impairment and, if so, whether it is severe. If the ALJ finds that the condition is a medically determinable impairment, he should evaluate what impact it has on the subsequent steps of his analysis.

## CONCLUSION

Based upon the above, Plaintiff Maurice Williams' request for review is granted. The final decision of the Commissioner is reversed and this matter is remanded for further proceedings.


**BY THE COURT:**


 *s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**